**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Chapman, | No. CV-19-08208-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Prescott Station Incorporated, et al., | |
| Defendants. | |

Pending before the Court is the parties' Joint Motion for Approval of Settlement Agreement (Doc. 16). Therein, the parties request approval of the Settlement Agreement, as is required in a Fair Labor Standards Act ("FLSA") case.

**I.   BACKGROUND**

Plaintiff initiated this action on July 16, 2019, with a three-count complaint alleging that Defendant failed to pay him wages for the hours he worked in violation of the FLSA, the Arizona Minimum Wage Act, and the Arizona Wage Act. (Doc. 1). Plaintiff alleges that he worked for Defendants for two weeks and worked approximately thirty hours and Defendants failed to pay him for that entire period. Plaintiff further alleges that Defendants agreed to pay him an hourly rate of $11.00 per hour. On August 28, 2019, just forty-three days after filing the Complaint, the parties notified the Court that they reached a settlement. (Doc. 14). The parties filed the instant Motion on September 12, 2019. (Doc. 16).

**II.   LEGAL STANDARD**

The FLSA was enacted "to protect all covered workers from substandard wages and

oppressive working hours." *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739 (1981). In view of the inequalities in bargaining power between employees and employers, Congress made the provisions of the FLSA mandatory. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). "Unlike most private settlements negotiated between parties in a civil action for damages, in a FLSA case or class action, the parties *must* seek the district court's approval of the settlement's terms to ensure that it is enforceable and fair." *Juvera v. Salcido*, 2013 WL 6628039, at *3 (D. Ariz. 2013) (emphasis added); *see also seeking McKeen-Chaplin v. Provident Sav. Bank, FSB,* 2018 WL 3474472, at *1 (E.D. Cal. July 19, 2018) ("FLSA rights generally cannot be waived, [and therefore,] settlement of private actions for back wages pursuant to 29 U.S.C. § 216(b) must be approved by the district court."). The Court's role is to act not as "'caretaker but as gatekeeper . . . [to] ensure that private FLSA settlement are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes.'" *Juvera*, 2013 WL 6628039, at *6 (quoting *Goudie v. Cable Communications, Inc.*, 2009 WL 88336, at *1 (D. Or. 2009)). In reviewing a FLSA settlement, a district court must first determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food,* 679 F.2d at 1355.

"If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages[,] . . . the court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652, at *5 (D. Ariz. Dec. 2, 2013); *see also Lopez*, 2010 WL 1403873, at *1 (holding a district court may approve a settlement agreement if it reflects a "reasonable compromise over the issues."). To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).

## III. DISCUSSION

### A. Reasonableness of FLSA Settlement Agreement

The Court must first determine whether a bona fide dispute exists. A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014). "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak*, 2017 WL 2688224, at *2. Here, the Court finds that there are legitimate questions about the existence and extent of Defendant's FLSA liability, including whether Plaintiff was in fact compensated for his work. *See Gonzalez v. Fallanghina, LLC*, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017). In light of these contending views on issues central to the case, the Court finds that this case involves a bona fide dispute.

As the Court is satisfied that a bona fide dispute exists, it must now determine whether the settlement is fair and reasonable. Here, the Settlement Agreement provides that in additional to the $238.48 Defendants already paid to Plaintiff for the hours he worked, less applicable tax withholdings, Defendants will pay Plaintiff an additional $431.30[1] to settle his claim for liquidated damages. (Doc. 16 at 2-3). Therefore, the total settlement amount is $669.78. (*Id.* at 6). The Court notes that the FLSA grants courts the discretion to award liquidated damages, in addition to unpaid wages, up to the amount specified in the FLSA based upon certain criteria. *See Vallejo v. Azteca Elec. Const. Inc.*, 2015 WL 419634, at *3 (D. Ariz. Feb. 2, 2015) ("When an employer violates [the FLSA], § 216(b) provides for payment of both unpaid wages plus an additional equal amount of liquidated damages."). Therefore, the Court finds that the settlement is fair, reasonable, and adequate and is in the best interest of Plaintiff in light of all known facts and circumstances.

---

[1] The parties represent in their Motion that that Defendants will pay Plaintiff $518.32 to settle his claim for liquated damages; however, the Settlement Agreement provides that Defendants will only pay Plaintiff $431.30. (*Compare* Doc. 16 at 2-3, *with id.* at 6-7). Thus, the Court will use the amount provided in the Settlement Agreement.

## B. Reasonableness of Attorney's Fees and Costs

Next, the Court turns to the calculation of attorney's fees. The FLSA has a fee-shifting provision. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). This provision is designed to allow employees access to courts without the burden of litigation costs. *See Kerzich v. County of Tuolumne*, 335 F. Supp. 3d 1179, 1188 (E.D. Cal. 2018) (listing cases discussing the purpose of the fee-shifting in FLSA cases). Attorney's fees in FLSA cases are typically determined using the lodestar method by calculating hours expended and hourly rates. *Id.* at 1185–86. Contingency fees are permitted; however, the court must still determine the reasonableness of the fee, regardless of any contract between the plaintiffs and their attorney. *See Silva v. Miller*, 307 F. App'x 349, 351–52 (11th Cir. 2009) ("To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.")

In assessing the reasonableness of contingency fees in FLSA settlements, many courts have found it helpful to rely on the Ninth Circuit's twenty-five percent benchmark for awarding attorney's fees in common fund cases. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Applying this calculation method, courts typically calculate [twenty-five percent] of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). However, such fee awards can range from twenty (20) percent to thirty-three and three tenths (33.3) percent. *See, e.g., Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorney's fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage."). There are factors that may warrant an upward departure from this twenty-five percent benchmark; however, "it must be made clear by the district court how it arrives at the figure ultimately awarded." *Paul, Johnson, Alston &*

*Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Gribble v. Cool Transps. Inc.*, 2008 WL 5281665, at *11 (C.D. Cal. Dec. 15, 2008) (applying *Graulty* in an FLSA case).

Here, the Settlement Agreement provides for an attorney's fee award and costs of $4,568.70. (Doc. 16 at 7). The parties have not provided Plaintiff's attorney's billing records or the retainer agreement between Plaintiff and her attorneys. Thus, the Court cannot determine the total number of hours worked, the hourly rate, nor the amount of costs incurred in connection with this litigation. In other words, the Court cannot use the lodestar method to calculate a reasonable attorney's fees award. Using the Ninth Circuit's presumptive reasonable attorney's fee award benchmark, the Court finds that twenty-five percent of the total settlement amount would be $167.45.[2] Here, the requested fee award is approximately <u>682</u> percent of the total settlement amount. Thus, the Settlement Agreement provides for an award of attorney's fees and costs that is significantly higher than the presumptive reasonable fee award of twenty-five percent of settlement amount. Furthermore, the parties have not provided any evidence to suggest that an upward departure from the benchmark is warranted here. Thus, the Court will not approve the current Settlement Agreement because it provides for an award of attorney's fees and costs significantly higher than the presumptive reasonable fee award of twenty-five percent of settlement amount.

Accordingly,

**IT IS ORDERED** that the parties' Joint Motion for Approval of Settlement Agreement (Doc. 16) is **DENIED** without prejudice.

Dated this 23rd day of September, 2019.

Honorable Diane J. Humetewa
United States District Judge

---

[2] The Settlement Agreement provides that Plaintiff's total recovery is $669.78; thus, twenty-five percent of $669.78 is $167.45.

- 5 -